**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────

**JAMES WIGHTMAN and**
**DANETTE WIGHTMAN,**

                 **Plaintiffs**          **11-CV-807A(Sr)**

**v.**

**VILLAGE OF WELLSVILLE,**
**JAY MATTISON, CM GREEN,**
**OFFICER JOHN DOE,**
**OFFICER RICHARD ROE, SEAN MILLS**
**and STEVEN MADDSON,**

                 **Defendants.**

─────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

       This matter was referred to the undersigned by the Hon. Richard J.

Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions.  Dkt. #4.


       Currently before the Court is defendants' "motion for summary judgment."

Dkt. #13.  As will be discussed below, it appears in certain instances that defendants'

motion is seeking dismissal of certain claims for failure to state a claim and in other

instances for summary judgment.  For the following reasons, it is recommended that the

instant motion be granted in part and denied in part.

## FACTUAL BACKGROUND

**Defendants' Statement of Facts**

According to the Wellsville Police Department incident report, on October 2, 2010 at approximately 11:35 p.m., the Wellsville Police Department received a "walk in complaint" that two women were fighting near the cemetery on South Main Street and that vehicles were blocking the roadway.[1]  Dkt. #13-8, pp.1-6.  Village of Wellsville Police Department Officers Chad Green, Jared Mattison and Sergeant Michael Nye responded to the complaint and upon arriving at the scene observed a vehicle (a blue Dodge pickup truck) stopped partly on the lawn and partly on the street and another vehicle (Dodge Durango) was parked on the roadway obstructing traffic.  Dkt. #13-1, p.5, ¶5; Dkt. #13-1, pp.7-8, ¶5; Dkt. #13-1, p.11, ¶5; Dkt. #13-8, p.2.

Upon arriving at the scene, Officer Green initially approached the driver of the Dodge Durango, Misty Sharp, who advised Officer Green that "everything was ok and they were just trying to get everyone home."  Dkt. #13-8, p.2.  Officer Mattison went to the pickup truck where he was joined by Officer Green.  *Id*. Officer Green began to interview Devin Thompson who was sitting in the drivers seat.  *Id*.  Because of Ryan Wightman's behavior in the truck, Officer Green asked Devin Thompson to step out of the truck and once out of the truck, Devin Thompson explained that the driver of the

_____

[1] In her affidavit submitted in opposition to the instant motion and as discussed *infra*, plaintiff, Danette Wightman claims that Wellsville Police Department Officer Chad Green encountered her, her husband, Ryan Wightman, her daughter, Jocelyn Saunders and Jocelyn's boyfriend, Devin Thompson, at approximately 10:30 p.m. at a gas station in Wellsville.

truck, Danette Wightman, had pulled over because of a medical issue and thereafter, started to argue with her daughter, Jocelyn (the Wellsville Police Department Incident Report spells her name Jacelyn) Saunders.  *Id*.

Shortly thereafter, Danette Wightman stated that she needed medical assistance.  Dkt. #13-1, p.5, ¶6; Dkt.#13-1, p.8, ¶6; Dkt.#13-1, p.11, ¶6.  Officer Green called for medical assistance and while waiting for assistance, Ryan Wightman "became verbally aggressive and started to yell obscenities at Officer Mattison."  *Id*. Officer Mattison placed Ryan Wightman under arrest and told him to exit the vehicle. *Id*.  After Ryan Wightman exited the vehicle and once Officer Mattison started to handcuff Ryan Wightman, he began to resist, requiring Officer Mattison to restrain Wightman.  *Id*.  While Officer Mattison was in the process of restraining Ryan Wightman, James Wightman, Ryan Wightman's father, ran up to Officer Mattison and began to yell at Officer Mattison using obscenities.  *Id*.  Sergeant Nye restrained James Wightman and placed him under arrest.  *Id*.  During this time, Communications Technician Shawn Mills arrived at the scene.  *Id*.

Once James and Ryan Wightman were restrained and placed in the back of the patrol car, Officer Green was advised by Officer Mattison that Danette Wightman had bitten her daughter, Jocelyn Saunders.  *Id*. at ¶7.  As Officer Mattison stood by the front passenger door, Danette Wightman attempted to kick the door open.  *Id*.  Officer Mattison pushed the door shut and thereafter, Danette Wightman kicked Officer

Mattison with her foot, through the window. *Id*. "Danette Wightman refused to obey our directions to stop necessitating her removal from the vehicle through the window from which she was kicking. Danette Wightman also kicked Communications Technician Shawn Mills in the chest. Danette Wightman was restrained but continued to resist and attempted to bite Shawn Mills, Jared Mattison and me [Chad Green]." *Id*. After Danette Wightman was restrained, Jocelyn Saunders stated that Danette Wightman tried to bite her but was not successful. *Id*. at ¶8.

Danette Wightman was transported from the scene by ambulance and Officer Mattison to Jones Memorial Hospital Emergency Department for her prior complaint of needing medical assistance. Dkt. #13-8, p.4. Officer Green transported James Wightman and Ryan Wightman to the station for processing. *Id*. Once at the station, Sergeant Nye observed that the left side of Ryan Wightman's head was bleeding. *Id*. Photos were taken and Ryan Wightman denied needing any medical assistance. *Id*. Ryan Wightman was processed on the charge of disorderly conduct; James Wightman was processed on the charge of obstructing governmental administration 2nd (Dkt. #13-5) and once Danette Wightman was released from the hospital, she was processed on charges of disorderly conduct and resisting arrest (Dkt.##13-6 and 13-7). *Id*. All three were arraigned before Justice Ames and remanded to the Allegany County Jail in lieu of bail and given return court dates. *Id*.

On December 7, 2010, relative to the charge of disorderly conduct, Danette Wightman plead guilty to a violation of "3 of 1984 A Local Law to Prevent Excessive, Disturbing, Unnecessary or Unreasonable Noise within the Village of Wellsville" (a noise ordinance) and was fined $125.00. Dkt. #13-10, p.2 and Dkt. #13-13. Pursuant to the plea deal, the charge of resisting arrest in violation of New York Penal Law 205.30 was dismissed. Dkt. #13-10. On December 8, 2010, relative to the charge of obstructing governmental administration 2nd, James Wightman plead guilty to a violation of "3 of 1984 A Local Law to Prevent Excessive, Disturbing, Unnecessary or Unreasonable Noise within the Village of Wellsville" (a noise ordinance) and was fined $125.00.

On or about September 23, 2011, plaintiffs James Wightman and Danette Wightman commenced this action against the Village of Wellsville, the Town of Wellsville, Jared Mattison, Chad M. Green, Officer "John Doe", Officer "Richard Rowe", Sean Mills and Steve Maddison. Dkt. #1. Plaintiff Danette Wightman is married to Ryan Wightman and plaintiff James Wightman is Ryan Wightman's father. In their Answer, defendants identified John Doe as Michael Nye. Dkt. #3. Thereafter, by a Stipulation of Discontinuance, plaintiffs discontinued the action against the Town of Wellsville. Dkt. #6. By their complaint, plaintiffs allege claims for malicious prosecution, excessive use of force, false arrest and false imprisonment against defendants. In addition, plaintiffs also claim violations of their Fourth and Fourteenth Amendment rights pursuant to Title 42, United States Code, Section 1983. Finally, plaintiffs appear to assert a claim pursuant to *Monell v. Department of Social Services*,

436 U.S. 658 (1978), that the Village of Wellsville may be held liable where its employees were acting pursuant to an official policy, custom or practice. Prior to conducting any discovery, defendants filed the instant "motion for summary judgment." Dkt. #13.

**Plaintiffs' Statement of Facts**

In opposition to the instant motion, plaintiffs James Wightman and Danette Wightman each submitted an affidavit. Dkt. ##41-1 and 14-2. In his affidavit, plaintiff James Wightman explained that at approximately 11:30 p.m. on October 2, 2010, he received a call from his step-granddaughter, Jocelyn Saunders, advising that members of the Wellsville Police Department were having an altercation with his son, Ryan Wightman. Dkt. #14-1, ¶2. James Wightman described that he immediately went to the location of the altercation, the Wellsville cemetery. *Id*. at ¶3. Plaintiff James Wightman summarized what he observed as follows,

4. When I was there, I observed several officers including Chad Green who I knew had been targeting Ryan. Officer Green and Ryan had gone to high school and there was animosity on the part of Chad Green against Ryan.

5. My house is about a two-minute drive from the cemetery. When I arrived at the cemetery, there were at least two police vehicles and I parked behind one and was walking towards Ryan, who I observed being held by Officer Green and another officer whose name I do not know.

6. When I was about 15 feet from Ryan, I observed his hands were handcuffed behind his back.

7. I observed Officer Green grab Ryan's belt from behind and deliberately cause him to fall forward which caused

-6-

> Ryan's head to strike the concrete. When I observed the
> force with which this occurred, I became concerned that
> his neck might have been broken.

Dkt. #14-1, ¶¶4-7. Thereafter, plaintiff James Wightman described that he yelled "What

the hell are you doing?" and rushed towards Ryan. *Id*. at ¶8. James Wightman further

described that before he could reach Ryan, two other officers took him to the ground

and when he asked what they were arresting him for, they replied, "how about

disorderly conduct?" *Id*. at ¶9.

Plaintiff James Wightman stated that he was later charged with

obstruction of governmental administration 2nd, placed in a jail cell and released after

posting $500 bail. *Id*. at ¶¶17-18. James Wightman explained that he retained an

attorney and the misdemeanor charge of obstruction of governmental administration

was reduced to a violation of a Village of Wellsville local noise ordinance and he paid

$125 fine. *Id*. at ¶19. Also in his affidavit, plaintiff James Wightman offered the

following explanation:

> 20. The reason I pled guilty to this reduced charge was
> because my son Ryan had been released from a court in
> Colorado with the condition that he stay out of trouble; my
> attorney informed me that unless we accepted this offer and
> plead to this lesser charge, the Wellsville Police were going
> to inform the Colorado authorities that Ryan had been in
> trouble and that he could be extradited to face serious
> consequences in Colorado.
>
> 21. Although Ryan was the first person arrested on this
> night, all charges against him were dismissed which is what
> was bargained for in order to keep him from being returned
> to Colorado.

Dkt. #41-1, ¶¶20-21. In addition, plaintiff James Wightman asserts that as a result of

the actions of the police, he was treated at Jones Memorial Hospital for an injury to his left wrist causing numbness, a burning sensation and a reduction in his ability to move his left hand. *Id*. at ¶23. In addition, plaintiff James Wightman claims that he has lost use of his left hand in that he cannot pick up anything in excess of 5 or 10 pounds, that his left hand is painful at night and has caused him to lose a substantial amount of sleep. *Id*. It was recommended that he undergo physical therapy to regain use of his left hand. *Id*. at ¶24. In addition, plaintiff states he received treatment at Jones Memorial Hospital for his injuries on February 25, 28, March 3, 7, 10 and 16. *Id*. at ¶26.

In her affidavit in opposition to the instant motion for summary judgment, plaintiff Danette Wightman described that on October 2, 2010, she, her husband Ryan, her daughter Jocelyn and Jocelyn's boyfriend Devin went to a wedding reception in Allegany County. Dkt. #14-2, ¶3. Plaintiff Danette Wightman explained that she was not feeling well and had taken an antihistamine, as well as some Advil cold and sinus medication and she surmised she was having a reaction to the medication, which may have been exacerbated by the wine she had during dinner. *Id*. at ¶¶5-6.

Plaintiff Danette Wightman further described the events of the evening as follows:

> 7. Around 10:30 p.m., I was having extreme difficulty breathing and I, therefore, rounded up my family and was on my way home.
>
> 8. While driving through the Village of Wellsville, I was having trouble breathing so at a location known only as a gas station, I pulled my vehicle over and got outside and

was walking around trying to catch my breath.

9. At this time, Officer Chad Green, whom I knew and who I know went to high school with my husband Ryan, pulled up and questioned our activities.

10. At this time, I was about 50 feet from my truck which was located somewhat less than a half-mile from the cemetery where this incident occurred, and several hundred yards past the police station.

11. I was not fighting with my daughter, but we were talking, and Officer Green told us to quiet down.

12. Approximately 45 minutes later, I was parked at the cemetery which is about a half-mile from the police station.

13. I had telephoned my friend, Misty Sharp, to come down and pick me up as I did not feel able to drive. By the time police came to this scene, I had already entered Misty Sharp's motor vehicle.

14. Her vehicle and my vehicle were parked on the main street at that cemetery.

***

21. Neither my vehicle nor Misty Sharp's vehicle was blocking the roadway. Each was pulled alongside the curb and partially off the street.

***

25. Officer Green was trying to open the door of the vehicle to pull my 15 year old daughter, Jocelyn, out. At this time, I was shouting at him that she was 15 years old, that she had not committed any crime or incident, and that if he wanted her to get out of the car and if he was going to arrest her, he should get a female police officer. He completely ignored my statements.

26. At this point, Shawn Mills had arrived in an ambulance and he grabbed my jacket and was attempting to pull me out of the vehicle.

> 27. Shawn Mills and police officer Mattison each grabbed one of my legs and pulled my through an open car window. At this point in time, they did not inform me that I was under arrest, they did not tell me what violation if any that I had committed, and to my knowledge there was no basis for them to pull me through the window.

Dkt. #14-2, ¶¶ 7-14, 21 and 25-27. Once she was out of the car, plaintiff Danette Wightman claims that Officer Green threw her to the ground and knelt on her, causing one of her ribs to fracture. *Id.* at ¶29. In addition, Danette Wightman alleges, "he also ran his hands up and down my leg on the inside right into my crotch and groin area." *Id*.

Plaintiff Danette Wightman was taken from the scene to Jones Memorial Hospital to receive treatment. She claims that "as a result of the excessive force used by the police, I sustained contusions with areas of tenderness and swelling; I was prescribed Vicodin; I sustained an injury to an elbow resulting in pain, swelling, disability and bruising; I was given a splint and a sling to wear and was disabled for approximately six weeks; I was provided with a shoulder immobilizer because of an injury to my shoulder that occurred when the police threw me to the ground and forcibly threw me to the ground so as to place handcuffs on me." Dkt.#14-2, ¶34.

## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).   A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific

factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


Pursuant to Fed.R.Civ.P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial."  *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also H. Sand & Co., Inc. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991) (hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in an affidavit).  The Supreme Court in holding that the clear and convincing standard of proof should be taken into account in ruling on summary judgment motions was not intended to "denigrate the role of the jury ... and [ ] by no means [did it] authorize[ ] a trial on affidavits."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  To the contrary, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ...."  *Id*.   Indeed, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id*.

**42 U.S.C. § 1983**

Plaintiffs assert § 1983 claims against defendants for false arrest and malicious prosecution.  42 U.S.C. § 1983 "permits an individual deprived of a federal right by a person acting under color of state law to seek compensation in federal court." *Wimmer v. Suffolk Cty Police Dep't*, 176 F.3d 125, 136 (2d Cir. 1999).  It is well established that "Section 1983 itself creates no substantive rights, [but] . . . provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim pursuant to § 1983, "plaintiff must prove that the challenged conduct was attributable at least in part to a person acting under color of state law, and that the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Id.* at 137.

**Plaintiffs' Claims of False Arrest and Malicious Prosecution**

Defendants argue that plaintiffs' claims of false arrest and malicious prosecution must fail because both plaintiffs plead guilty to a violation of the local noise ordinance in full satisfaction of the criminal charges.  Dkt. #13-14, pp.3-4.  In support of this argument, defendants rely on a 2012 decision from the Eastern District of New York wherein the Court denied a plaintiff's motion to amend his complaint to add additional claims of false arrest and malicious prosecution on the basis that the amendment would be futile.  In so holding, the Court reasoned,

> The absence of probable cause is a necessary element in both a false arrest and a malicious prosecution claim. *See*

> *Cameron v. Wise*, No. 09 Civ. 967(PKC)(JLC), 2011 WL
> 1496341, at *5 (S.D.N.Y. April 20, 2011) FN4 ("The Second
> Circuit has made it clear that the existence of probable
> cause is a complete bar to a claim for malicious prosecution
> or false arrest") (citing *D'Olimpio v. Cristafi*, 718 F.Supp.2d
> 357, 364–65 (S.D.N.Y.2010), *Jenkins v. City of New York*,
> 478 F.3d 76, 84 (2d Cir.2007) and *Bonide Prods., Inc. v.
> Cahill*, 223 F.3d 141, 145 (2d Cir.2000)). "[A] conviction of
> the plaintiff following the arrest is viewed as establishing the
> existence of probable cause." *Cameron v. Fogarty*, 806 F.2d
> 380, 387 (2d Cir.1986) (citations omitted). "Since a guilty
> plea is the equivalent of a conviction, a guilty plea will also
> bar a § 1983 false arrest claim." *Wims v. New York City
> Police Dep't*, No. 10 Civ. 6128(PKC), 2011 WL 2946369, at
> *3 (S.D.N.Y. July 20, 2011) (*quoting Hernandez v. City of
> New York*, No. 00 Civ. 9507, 2004 WL 2624675, at *5
> (S.D.N.Y. Nov.18, 2004)).

*Montane v. Pettie*, No. 10 CV 4404(ARR)(LB), 2012 WL 1617864, at *3 (April 6, 2012

E.D.N.Y.).  With respect to plaintiffs' malicious prosecution claim, defendants also rely

on *Irish v. The City of New York*, wherein the Court noted that an essential element of a

malicious prosecution claim was probable cause.  See *Irish v. The City of New York*,

No. 09 Civ. 5568(RMB), 2010 WL 5065896 (Dec. 6, 2012 S.D.N.Y.).


        In *Hope v. City of New York*, No. 08-CV-5022(BMC), 2010 WL 331678

(Jan. 22, 2010 E.D.N.Y.), the Court clarified that the common law conviction defense

adopted by the Second Circuit in *Cameron* does not require plaintiff to have been

convicted of "exactly the same charge for which he was arrested."  *Hope v. City of New

York*, No. 08-CV-5022(BMC), 2010 WL 331678 at *2, n.4 (Jan. 22, 2010 E.D.N.Y.).

Moreover, the Court in *Hope* stated, "[i]t is rare that a defendant pleads guilty to every

charge against him when there are multiple charges.  The more logical approach, the

approach I adopt here, is to consider as a total transaction whether the activity forming

the basis for the arrest is the same as the activity to which the defendant pleaded

guilty." *Id*.

In opposition to the instant motion for summary judgment with respect to

plaintiffs' claims for malicious prosecution and false arrest, plaintiffs endeavor to

manufacture issues of fact in an attempt to convince the Court to deny the motion for

summary judgment. More specifically, in seven separate paragraphs, the plaintiffs

attempt to discredit the statements made in the incident report as incomplete, unreliable

or factually impracticable. For example, plaintiffs assert,

> The incident report prepared by Officer Chad Green, one of
> the defendants, which he admits to in his affidavit, at the
> very least presents serious questions as to its reliability.
>
> a. The report starts by indicating that dispatch received a
> walk-in complaint reporting that two (2) females were fighting
> near the cemetery on South Main Street and vehicles were
> blocking the roadway. It is submitted that this, in and of
> itself, draws some serious questions of the reliability of the
> report because "dispatch" never took down the name of the
> complainant which is contrary to all recognized rules and
> regulations of police procedure.
>
> b. In addition, the report indicates that it was made at 11:35
> in the evening and the location of the vehicles allegedly
> blocking the roadway were approximately one-half mile from
> the Wellsville Police Department Headquarters. It is,
> therefore, suggested that it is extremely unusual to have
> someone walking down a street at 11:30 in the evening
> observing two (2) females fighting and then continue walking
> another half of a mile to report it to the police department
> and then the police do not even bother to take down the
> complainant's name.

Dkt. #14, ¶¶15(a)-(b). While plaintiffs' assertions concerning the reliability and veracity

of the statements contained in the incident report and by extension the statements made in Officer Chad Green's affidavit would bear on the weight this Court gives to the affidavit, plaintiffs ignore the fact that their guilty pleas negate an element of a false arrest and malicious prosecution claim. *Montante v. Pettie*, 2012 WL 1617864, at *3.

Following the precedent in *Hope*, this Court will consider and evaluate the total transaction and determine whether the activity forming the basis for the arrest is the same as the activity to which James Wightman and Danette Wightman pleaded guilty. James Wightman was charged with obstructing governmental administration 2nd, a Class A misdemeanor, in violation of Section 195.05 of the New York Penal Law. The facts to support the charge as alleged in the Information state,

> On the aforementioned date and place the defendant did commit the offense of Obstructing Governmental Administration 2nd, TO WIT: the defendant, James D. Wightman did charge and intentionally try to prevent the administration of law as Wellsville Police Officers were attempting to effect an [sic] lawful arrest on Ryan Wightman for disorderly conduct.

Dkt. #13-5, p.2. Thereafter, on December 8, 2010, plaintiff James Wightman plead guilty to a violation of 3 of 1984 a Local Law to Prevent Excessive, Disturbing, Unnecessary Unreasonable Noise within the Village of Wellsville. Dkt. #13-9, p.2. By his own admission, plaintiff James Wightman yelled at the officers, "what the hell are you doing?" Dkt. #14-1, ¶8. Based on the totality of the circumstances surrounding the events of October 2, 2010 as reflected in the record before this Court, I conclude that the charge to which plaintiff James Wightman plead guilty, a violation of the local noise ordinance arises out of the same activity for which he was arrested.

In evaluating the total transaction as it relates to plaintiff Danette Wightman, the Court reaches the same conclusion, that her plea to a violation of the local noise ordinance arises out of the same activity for which she was arrested. Following the incident on October 2, 2010, Danette Wightman was charged with disorderly conduct, a Class U violation of Section 240.20 of the New York Penal Law and resisting arrest a Class A Misdemeanor in violation of Section 205.30 of the New York Penal Law. The Information charging her with disorderly conduct stated,

> On the aforementioned date and place the defendant did commit the offense of disorderly conduct sub 1 TO WIT: the defendant, Danette R. Wightman did recklessly create a risk while attempting to kick and fight with Wellsville Police Officers while investigating an incident on South Main St. The defendant also used the work [sic] [expletive] several times while she was kicking and fighting the Officers.

Dkt. #13-7, p.2. The Information charging her with resisting arrest stated,

> On the above date at or about 23:48 the defendant did commit the offense of resisting arrest to wit: the defendant Danette R. Wightman while being placed under arrest for disorderly conduct did attempt to kick officer while officer were [sic] attempting to make a lawful arrest on the defendant.

Dkt. #13-6, p.2. Plaintiff Danette Wightman admitted in her affidavit that at one point in time she was "shouting at him [Officer Green]." Dkt. #14-2, ¶25. For the foregoing reasons, because this Court concludes that the charges to which the plaintiffs plead guilty arose out of the same activity for which they were arrested, the convictions are a complete defense against plaintiffs' false arrest and malicious prosecution claims. Accordingly, this Court recommends that defendants' motion for summary judgment on plaintiffs' false arrest and malicious prosecution claims be granted.

**Plaintiffs' Section 1983 Claim**

Plaintiffs claim that all defendants violated their Fourth and Fourteenth Amendment rights as guaranteed by Title 42, United States Code, Section 1983. As part of this claim, plaintiffs allege that "on or about November 16, 2010, in the Village Court of the VILLAGE OF WELLSVILLE, all of the criminal charges and Penal Law violations alleged against these Plaintiffs were dismissed." Dkt. #1. Based on the record before this Court and as set forth in defendants' motion for summary judgment, plaintiffs' claim that all criminal charges were dismissed is not accurate. In fact, defendants claim, "[w]hile the original charges were dismissed, this was only after plaintiffs entered into a plea bargain, pleading guilty to a lesser charge." Dkt. #13-14, p.4.

To establish a Fourth Amendment malicious prosecution under § 1983, Plaintiff must show "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, ... (4) that the prosecution was terminated in the plaintiff's favor[, and] (5) a sufficient post-arraignment liberty restraint, to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir.2000) (internal citations omitted). "'A plaintiff alleging the constitutional tort of malicious prosecution in an action pursuant to § 1983 must establish termination of the prosecution in his favor,' *Hygh v. Jacobs*, 961 F.2d 359, 367 (2d Cir. 1992), which is accomplished 'only when their final disposition is such as to

indicate the accused is not guilty.' *Singleton v. City of N.Y.*, 632 F.2d 185, 195 (2d Cir. 1980)." *Barmapov v. Barry*, No. 09-CV-03390(RRM)(RML), 2011 WL 32371, at *4 (jan. 5, 2011 E.D.N.Y.).

Here, there is no question, plaintiffs each negotiated their guilty pleas in exchange for the Wellsville Police Department's agreement not to notify the Colorado authorities and to have Ryan Wightman extradited to Colorado because he had violated a condition of his release from a court in Colorado. As part of the plea deals reached, James Wightman's charge of obstructing governmental administration 2nd was plead down to a violation of the noise ordinance and Danette Wightman's charge of disorderly conduct was plead down to a violation of the noise ordinance. Also in exchange for her guilty plea, Danette Wightman's charge of resisting arrest was dismissed. Specifically with respect to the claims of malicious prosecution against Officer Chad Green, Officer Green served as the complainant in the Information charging James Wightman with obstructing governmental administration and in the Information charging Danette Wightman with disorderly conduct. In each Information the factual allegations were made based on personal knowledge and upon information and belief. Accordingly, because plaintiffs will be unable to satisfy the jurisdictional prerequisite, that the prosecution of Danette Wightman for disorderly conduct and the prosecution of James Wightman for obstruction of governmental administration were terminated in plaintiffs' favor, this Court recommends that plaintiffs' claims of malicious prosecution against defendant Chad Green as they relate to those charges should also be dismissed as a matter of law.

With respect to the Information charging Danette Wightman with resisting arrest, Officer J. Mattison served as the complainant and the factual allegations were based upon personal knowledge and upon information and belief.  Plaintiffs have not come forward with any evidence in admissible form to demonstrate that defendant acted with malice.  Moreover, the dismissal of the resisting arrest charge was in exchange for Danette Wightman's plea of guilty to the noise ordinance and the agreement of the Wellsville Police Department not to notify the Colorado authorities of Ryan Wightman's arrest.  Accordingly, the dismissal of the resisting arrest charge against Danette Wightman did not constitute a termination of the prosecution in her favor and therefore fails to satisfy the jurisdictional predicate for a malicious prosecution claim.  Even assuming *arguendo* that the dismissal of the resisting arrest charge could be construed as satisfying the jurisdictional predicate, there is nothing in the record to suggest that defendant J. Mattison acted with actual malice, therefore, this claim must also be dismissed as a matter of law.

**Excessive Use of Force Claims**

It appears from a liberal reading of plaintiffs' complaint, that plaintiffs believe that they have alleged a claim or claims of excessive use of force.  In the section entitled "FACTS APPLICABLE TO ALL CLAIMS," plaintiffs state, "That the above named Officers of the Wellsville Police Department detained and arrested the claimants in a manner that was unreasonable, negligent, careless, utilizing excessive force and was in violation of Plaintiff's [sic] constitutional rights under the Fourth and Fourteenth Amendments under the United States Constitution."  Dkt. #1.  In support of

the instant motion the defendants argue that plaintiffs' complaint alleges only unspecified injuries by unidentified officers. Dkt. #13-14, p.6. Defendants conclude that "plaintiffs' complaint is legally insufficient, in that, plaintiff's [sic] allegations do not establish the elements of excessive force." *Id*. In opposition to the instant motion for summary judgment plaintiffs state,

> Certainly the affidavits of Danette Wightman and James Wightman establish that the use of force upon them was excessive and not justified because neither of them were ever told they were under arrest. It is clear from the affidavits of the police officers, as well as the police report, that without just cause or provocation they were assaulted by the police who forcibly placed them under arrest for no reason and that if there was any incident that erupted that night, it was provocated [sic] by the police. The affidavits of the plaintiffs establish that they did, in fact, sustain injuries and under the rules of summary judgment at this stage of the proceedings, this Court must conclude that the allegations of excessive force have been established.

Dkt. #14, ¶¶19-20.


With respect to deciding defendants' motion for summary judgment, plaintiffs' claim of excessive use of force during their October 2, 2010 arrest must be analyzed under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). In order to establish that an officer used excessive force, the plaintiff must demonstrate, "in light of the totality of the circumstances faced by the arresting officer, [that] the amount of force used was objectively [un]reasonable at the time." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir.2004), *citing Graham*, 490 U.S. at 397. "The inquiry therefore 'requires careful attention to the facts and

circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id*. at 123, *citing Graham*, 490 U.S. at 396. "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty America*, 361 F.3d at 123.

An officer is justified in using force when a person whom he is trying to arrest resists, threatens, or assaults the officer. *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir.2000). However, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Id*. As the Second Circuit explained:

> The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer. It is clear, therefore, that there is no inherent conflict between a conviction for resisting arrest or harassment of a police officer and a finding that the police officers used excessive force in effectuating the arrest.

*Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000) (italics in original).

Although the plaintiffs' complaint contains few allegations concerning alleged excessive use of force, the affidavits submitted by the parties concerning the facts and circumstances surrounding the arrest of James Wightman and Danette Wightman appear to this Court to be far from undisputed. Perhaps inartfully drafted and lacking in details, plaintiffs' complaint does supply the named defendants with notice of a claim for excessive use of force and therefore is not subject to dismissal. Because the affidavits submitted by the parties concerning the instant motion describe factually inconsistent scenarios surrounding plaintiffs' arrests, summary judgment would be inappropriate at this time. For these reasons, it is hereby recommended that defendants' motion to the extent it seeks dismissal of the excessive use of force claim be denied and that the defendants' motion to the extent it is seeking summary judgment also be denied.

**Claim Against the Village of Wellsville**

As noted above, plaintiffs originally named the Village of Wellsville and the Town of Wellsville as defendants in this matter. Thereafter, by a Stipulation of Discontinuance, plaintiffs discontinued the action against the Town of Wellsville. Dkt. #6. Plaintiffs appear to assert a claim pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), that the Village of Wellsville may be held liable where its employees were acting pursuant to an official policy, custom or practice. In the complaint, plaintiffs allege that the "Village of Wellsville condoned, cajoled, urged and required the individuals [sic] Defendants to act in violation of the constitutional rights of the Plaintiff [sic]." Dkt. #1. In their answer to the complaint defendants assert the

following as an affirmative defense, "upon information and belief, the plaintiffs fail to state a cause of action against these defendants upon which relief may be granted." Dkt. #3, ¶10.

In the instant motion, defendants state, "Plaintiff's [sic] broad allegation of improper training and supervision is not supported factually in the Complaint. The Complaint is silent on policies or procedures that are allegedly in place that are unconstitutional. Plaintiffs' pleas following their arrest establish a complete defense to this cause of action." Dkt. #13-14, p.6. Although improperly titled a motion for summary judgment, the relief defendants are seeking is the dismissal of the complaint for failure to state a cause of action. Under the circumstances, this Court agrees with defendants that the complaint is indeed silent on any Village of Wellsville policies or procedures that are unconstitutional. Absent such allegations, this Court recommends that the complaint as against the Village of Wellsville be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, this Court recommends that defendants' motion for summary judgment on plaintiffs' false arrest and malicious prosecution claims be granted.  This Court further recommends that defendants' motion for summary judgment on plaintiffs' § 1983 claim be granted.  With respect to plaintiffs' excessive use of force claim, this Court recommends that defendants' motion be denied.  Finally, the Court recommends that plaintiffs' claims against the Village of Wellsville be dismissed without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v.*

*Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED:    Buffalo, New York
          August 23, 2013

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**